UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re
    AMY B. HAMM,                                                     11-11648 B

                            Debtor
------------------------------------------------------
AMY B. HAMM,

                            Plaintiff

             v.                                                   AP 11-1109 B

PHH MORTGAGE CORPORATION; and
UNITED GUARANTY MORTGAGE INDEMNITY COMPANY

                         Defendants
------------------------------------------------------

        Peter Grubea Attorneys
        Peter D. Grubea, Esq., of counsel
        482 Delaware Avenue
        Buffalo, New York 14202
        Attorneys for the Plaintiff

        Shapiro, DiCaro & Barak, LLC
        Jillian Farrar, Esq., of counsel
        250 Mile Crossing Boulevard, Suite One
        Rochester, New York 14624
        Attorneys for PHH Mortgage Corporation

        Peter N. Tsapatsaris, Esq.,
        200 East 33rd Street
        27th Floor, Suite D
        New York, New York 10016
        Attorney for United Guaranty Mortgage Indemnity

Bucki, Chief U.S.B.J., W.D.N.Y.

      In complaints with multiple causes of action, plaintiffs have traditionally included into each successive cause of action an initial paragraph that incorporates all of the prior allegations. *See Citibank v. Hyland (In re Hyland)*, 213 B.R. 631 (Bankr. W.D.N.Y. 1997). The debtor in this case followed this practice in drafting a complaint

that challenges the validity of premiums for private mortgage insurance. On the present motion, the mortgagee and insurer seek the dismissal of two causes of action: one that alleges a violation of New York Insurance Law § 6504(c) and another that alleges a violation of New York Banking Law § 6-*l*. Even if these causes of action do not state a "stand alone" basis for relief, an incorporation of prior allegations into the later cause of action will serve to deny the motion of the mortgagee.

The parties do not dispute many of the essential facts of this case. On June 28, 2006, Amy B. Hamm purchased her residence at 9587 Quebec Street in the Town of Angola, New York. On that same day, she also executed a note and mortgage in favor of Century 21 Mortgage, an entity now known as PHH Mortgage Corporation ("PHH"). The note stated a principal obligation of $139,600, which Hamm agreed to repay with interest at a rate of 8.094%, by means of monthly payments in the amount of $1,033.50. Because the note financed the entire purchase price of the home, the mortgagee required as a condition for its lending that Amy Hamm also procure private mortgage insurance. This private mortgage insurance was issued by United Guaranty Mortgage Indemnity Company ("United Guaranty"), which then charged a monthly insurance premium of $486. Meanwhile, to reduce its exposure, United Guaranty purchased reinsurance coverage from Atrium Insurance Corporation. The defendants acknowledge that Atrium is a subsidiary of PHH.

After Amy Hamm defaulted in making payments due under the note, PHH commenced foreclosure proceedings in August 2010. Before a foreclosure sale could occur, however, Hamm filed a petition for relief under Chapter 13 of the Bankruptcy Code on May 9, 2011. Then in October of 2011, Hamm commenced an adversary

proceeding against PHH, United Guaranty and the Federal National Mortgage Association. Previously, the court dismissed all claims against the Federal National Mortgage Association, and nine of the original thirteen causes of action have either been withdrawn or dismissed. In their present motions, PHH and United renew requests to dismiss the fourth and sixth causes of action.

The debtor's fourth cause of action alleges a violation of Insurance Law § 6504, which prohibits a mortgage insurer from paying various forms of compensation to affiliates of an insured lender. In particular, the statute states that "[i]n connection with the placement or renewal of any insurance, a mortgage insurer shall not permit any compensation to be paid to, or received by: any insured lender . . . or other entity in which an insured . . . has a financial interest." N.Y. INS. LAW § 6504(c)(McKinney, 2000). In the present transaction, United Guaranty and PHH are respectively the mortgage insurer and insured lender. Hamm argues that by reason of its payment of reinsurance premiums to Atrium, United Guaranty violated the prohibition against payment of compensation to an entity in which the insured has a financial interest. Consequently, Amy Hamm now seeks an order prohibiting the collection of any premiums for private mortgage insurance, awarding damages equal to the sums that she already paid for such insurance premiums, and reducing the mortgage balance to the extent that it includes any such insurance premiums.

In her sixth cause of action, the debtor seeks damages for an alleged violation of New York Banking Law § 6-*l*, which imposes special underwriting and disclosure requirements for high-cost home loans. Hamm argues that under the facts of the instant case, the private mortgage insurance premiums represent a cost that should

qualify her mortgage as a high-cost loan.  She further contends that PHH violated the mandates of Banking Law §6-*l*, in that it made the loan without regard to the debtor's ability to pay and without the delivery of various notices to the debtor.  By reason of these alleged violations, Amy Hamm seeks damages equal to all payments made on account of the note, together with an order enjoining PHH from enforcing its mortgage.

United Guaranty and PHH have filed separate motions to dismiss.  Together, these motions present four principal arguments:  that the filed-rate doctrine precludes any claim under Insurance Law §6504; that section 6504 establishes no private right of action; that Banking Law §6-*l* exempts premiums for private mortgage insurance as a cost factor; and that the voluntary payment doctrine bars any cause of action to secure a return of payments made.

The filed-rate doctrine is a "rule forbidding a regulated entity . . . to charge a rate other than one on file with the appropriate . . . regulatory authority." BLACK'S LAW DICTIONARY 704 (9th ed. 2009) .  PHH argues that the New York Insurance Department must approve rates for private mortgage insurance and reinsurance; that United Guaranty and Atrium charged only the rates that were so approved; and that because these rates complied with applicable regulations, Amy Hamm may not now challenge the premiums that she paid.  This argument, however, does not address any issue that is now before this court.  The plaintiff does not challenge the rate used to calculate her premiums, but argues instead that in choosing a reinsurer, United Guaranty violated a prohibition against payment of compensation to an entity that is affiliated with PHH.  As to this issue, the filed-rate doctrine has no relevance.

Amy Hamm adequately alleges a violation of Insurance Law § 6504.  That

violation, however, does not necessarily create a basis for liability. Section 6504 merely imposes a prohibition that the Insurance Department may enforce. Otherwise, the statute does not establish any private right of action. *See Walts v. First Union Mortgage Corp.*, 259 A.D.2d 322 (1st Dept. 1999), *aff'g Bauer v. Mellon Mortgage Co.*, 178 Misc. 2d 234 (Sup. Ct. 1998). Nor does the plaintiff advance any other theory for liability under section 6504, such as by reason of civil conspiracy or otherwise. Standing alone, therefore, the fourth cause of action fails to assert a basis for relief.

The sixth cause of action is different, in that its statutory predicate expressly allows a private right of action. Banking Law § 6-*l*(5) provides that "any party to a high-cost loan may enforce the provisions of this section." Further, the statute allows a borrower to recover from her lender both actual and statutory damages, as well as "reasonable attorneys' fees." N.Y. BANKING LAW §§ 6-*l*(7) and (8)(McKinney Supp. 2011). Acknowledging that the statute may establish a private right, PHH contends nonetheless that the disputed note does not qualify as a high-cost home loan.

Banking Law § 6-*l*(1)(d) defines a "High-cost home loan" as a home loan that exceeds either of two statutory thresholds. The plaintiff relies upon the second such threshold, which occurs when the total points and fees surpass "five percent of the total loan amount if the total loan amount is fifty thousand dollars or more." N.Y. BANKING LAW § 6-*l*(1)(g)(ii)(McKinney Supp. 2011). The debtor concedes that her loan will meet this standard only if we treat at least the reinsurance portion of her private mortgage insurance as a point or fee. Incorporating a portion of the federal definition of finance charges, Banking Law § 6-*l*(1)(f)(i) states that "points and fees" include the first four of six items listed in 15 U.S.C. § 1605(a). Hamm argues that the reinsurance

portion of her premium qualifies under the first category as an "amount payable under a . . . system of additional charges." 15 U.S.C. § 1605(a)(1). PHH counters that 15 U.S.C. §1605(a)(5) references a "Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss." Because the definition of fees and points expressly includes only the items listed in section 1605(a)(1) through (4), PHH contends that by implication, premiums for private mortgage insurance are excluded.

For purposes of statutory interpretation, New York law recognizes the principle that e*xpressio unius est exclusio alterius*. "That is, to say, the specific mention of one person or thing implies the exclusion of other persons or thing." N.Y. STAT. LAW § 240 ( McKinney 1971). By declining to include premiums for private mortgage insurance into the definition of fees and points, the Banking Law excludes the consideration of any such legitimate expense. In the present instance, the debtor's sixth cause of action incorporates the allegations of the fourth cause of action arising under the Insurance Law. Although it might not establish a private right of action, Insurance Law §6504 serves to identify whether a contract qualifies to establish a cognizable and legitimate policy of private mortgage insurance. To the extent that the private mortgage insurance does not here comply with the mandates of Insurance Law §6504, its premiums may not fully qualify for the exclusion from the total of points and fees needed to establish liability under the high-cost home loan provisions of Banking Law § 6-*l*.

The requirements of Insurance Law §6504 coincide with the practical and economic realities of this disputed mortgage transaction. For prudent lenders, private

mortgage insurance can serve legitimately to reduce the risk of default. Similarly, reinsurance can serve legitimately to reduce the exposure that the primary insurer would otherwise assume. But when the reinsurer is itself the lender or its affiliate, that lender effectively re-assumes the very risk that private mortgage insurance was designed to dissipate. In some such circumstances, the reinsurance will negate the purpose of private mortgage insurance, thereby allowing an assumption of risks that law and/or prudence would reject. Essentially, the "private mortgage insurance" loses its character as insurance, but becomes a device whereby the lender derives additional compensation. This is not to say that captive reinsurance arrangements will necessarily represent an illegitimate transfer of risk in every instance. *See* Circular Letter No. 2, N.Y. Insurance Department, Feb. 1, 1999.[1] For now, it suffices to conclude that Amy Hamm should be allowed opportunities at trial to demonstrate whether to incorporate reinsurance premiums into the calculation of the cost of a high-cost loan.

PHH argues also that because the debtor paid premiums voluntarily and without protest, she lacks the ability now to challenge those payments. When a statute merely prohibits certain activity, this voluntary payment doctrine might preclude a claim for the return of any voluntary advances. Banking Law § 6-*l* does more, however, in that it expressly creates a cause of action to recover damages, including specifically a

---

[1] In Circular Letter No. 2, the Insurance Department states that it "has reviewed and reconsidered Sections 2324(a) and 6504(c) of the Insurance Law and has determined that under certain circumstances lender captive reinsurance arrangements do not fall within the prohibitions articulated in those statutes." By implication, this letter acknowledges that in certain other circumstances, section 6504 would prohibit such arrangements. The Department further stated that it was "in the process of developing guidelines and, if appropriate, a regulation which will articulate the parameters under which these reinsurance arrangements will be permitted." To the best of the court's awareness, no such guidelines or regulations have been issued during the fourteen years that have passed since the issuance of Circular Letter No. 2.

refund for "any amounts paid." N.Y.BANKING LAW § 6-*l*(7)(b)(McKinney 2011). Consequently, to the extent that Amy Hamm can establish a violation of the statute, Banking Law § 6-*l* will allow a recovery of payments made voluntarily.

Banking Law § 6-*l* imposes liability upon lenders and not upon mortgage insurers. Presumably for this reason, the debtor's sixth cause of action does not seek recovery from United Guaranty. Accordingly, with regard to United Guaranty, the debtor's fourth cause of action stands alone. Because Insurance Law § 6504 does not establish a private cause of action, the court will grant the motion of United Guaranty to dismiss the only outstanding claim against it. In contrast, by reason of the incorporation of all prior allegations into the sixth cause of action, the fourth and sixth causes of action stand together to state a cause of action as against PHH. Although Hamm must still prove several essential elements of her claim, she adequately asserts that Insurance Law § 6504 may serve to identify costs that necessitate the application of Banking Law § 6-*l*. Accordingly, the motion of PHH to dismiss those causes of action is denied.

So ordered.

Dated:   Buffalo, New York                              /s/   CARL L. BUCKI
             September 18, 2013                      Carl L. Bucki, Chief, U.S.B.J., W.D.N.Y.